**Sandra FAUCHER and Maine Right to Life Committee, Inc., Plaintiffs,**

v.

**FEDERAL ELECTION COMMISSION and Richard Thornburgh, Defendants.**

**Civ. No. 90–0112–B.**

United States District Court,
D. Maine.

June 29, 1990.

**66**

James Bopp Jr., Richard E. Coleson, Brames, McCormick, Bopp & Abel, Terre Haute, Ind., Bryan Dench, Skelton, Taintor & Abbott, Auburn, Me., for plaintiffs.

Robert Bonham, Richard Bader, Office of General Counsel, Federal Election Com'n, Washington, D.C., David Collins, Asst. U.S. Atty., Portland, Me., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HORNBY, District Judge.

### BACKGROUND

In 1985, Faucher and the Maine Right to Life Committee (MRLC) sued the Federal Election Commission (FEC) and the United States Attorney General in this Court, challenging FEC regulations governing the publication of voter guides by corporations. That suit was stayed pending the outcome of a United States Supreme Court decision ultimately handed down in 1986. *FEC v. Massachusetts Citizens for Life*, 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). On February 24, 1989, the lawsuit was dismissed on the ground that the plaintiffs needed first to obtain an FEC advisory opinion on the legality of any proposed publication. 708 F.Supp. 9 (D.Me.1989). The plaintiffs sought such an advisory opinion on May 15, 1989. The FEC requested additional information, which the plaintiffs provided on October 24, 1989. The FEC then issued its advisory opinion February 14, 1990, finding the plaintiffs' proposed publication illegal because (a) MRLC has a policy of accepting contributions from corporations and has, in fact, accepted such contributions, thus distinguishing its circumstances from the publication permitted by the Supreme Court in *FEC v. Massachusetts Citizens for Life;* and (b) MRLC's proposed publication does not meet the factors contained in the Commission's regulations permitting nonpartisan voter guides, inasmuch as the proposed publication suggests that the MRLC does favor a position, specifically a pro-life position.

The plaintiffs filed the current lawsuit against the same defendants on April 12, 1990. They filed an application for preliminary injunction on May 23, 1990. A telephone scheduling conference was held with counsel on May 25, 1990. The FEC and Attorney General filed their motions to dismiss on June 1, 1990. A hearing on the application for preliminary injunction was held on June 4, 1990. At that time all parties agreed to stipulate to the record before the Court, and the trial of the action on the merits was advanced and consolidated with the hearing on the application for preliminary injunction. *See* Fed.R.Civ.P. 65(a)(2).

### FACTS

Maine Right to Life Committee, Inc., is a nonprofit membership corporation exempt from federal income tax under Internal Revenue Code § 501(c)(4). MRLC has approximately 1,800 members. Sandra Faucher is a member of the Board of Directors. MRLC is not affiliated with any political party or campaign committee, but is an ideological organization whose purpose is to promote the sanctity of human life, both born and unborn, and educate the public on pro-life issues. MRLC does not engage in business activities other than the raising of funds to carry out the corporation's expressed purposes. It has established a separate segregated fund designated as the Maine Right to Life Committee Political Action Committee (PAC).

Over the years, MRLC has received non-PAC contributions from corporations or businesses as follows:

| | Government/Business Contributions | Total non-PAC Contributions |
|---|---|---|
| 1984 | $ 365 | $ 31,879.71 |
| 1985 | 87 | 48,614.68 |
| 1986 | 175 | 69,286.78 |
| 1987 | 393 | 74,321.31 |
| 1988 | 285 | 66,607.46 |
| 1989 | 470 | 70,999.25 |

MRLC has no written policy regarding the acceptance of corporate or business contributions. MRLC publishes a bi-monthly newsletter using its general and education funds, but not its PAC funds.

The newsletter, containing educational articles and news of local chapter activities, is mailed to all dues-paying members of MRLC and handed out to members of the public in schools, churches and elsewhere. Before an election, MRLC conducts a candidate survey to ascertain federal and state candidates' positions on prolife issues. The survey responses are published in the newsletter. The November 1988 issue of the newsletter was entitled "November Election Issue 1988!" The subheading was "Federal & State Candidate Surveys Enclosed—Take-along Issue for Election Day!" The front page featured pictures of George Bush and Michael Dukakis with copy concerning the positions of the presidential and vice-presidential candidates and the respective party platforms on pro-life issues. The second, third and fourth pages featured the questionnaire and the candidates' responses. The newsletter stated:

> *Please recheck your candidate's survey,* even if you already received our primary survey issue. The fall polling pulled in some new respondents, and those who did not respond at all need to be contacted by pro-life constituents so that their positions can be determined. *It is vital that your local candidate hear from you on this issue.* Please look this survey over carefully, contact your local candidates, and call the MRLC office to report your results!

1. I am aware that the primary election has taken place. No 1990 version of the publication,

(emphasis original). The newsletter also stated, "The publication of the MRLC November Election Candidate Survey does not represent an endorsement of any candidate(s) by MRLC."

MRLC plans to publish newsletter issues for the 1990 Maine election and primary "substantially similar" to the November 1988 voter guide.[1]

### RELIEF REQUESTED

The plaintiffs seek a declaratory judgment that the FEC's voter guide regulations are beyond the authority of the FEC and unconstitutionally vague; a declaratory judgment that the MRLC's proposed 1990 publications are permissible under the Federal Election Campaign Act of 1971 as interpreted by the United States Supreme Court; and an injunction against the defendants to prevent them from enforcing the regulations against the plaintiffs' 1990 publications. The plaintiffs also seek attorneys' fees and costs.

The defendants have moved to dismiss the action for lack of jurisdiction, failure to state a claim upon which relief can be granted and the inappropriateness of equitable relief.

### DECLARATORY JUDGMENT CHALLENGE TO THE FEC REGULATIONS

■ A federal court has authority to review a challenge to the legality of federal agency regulations under the Administrative Procedure Act (APA) under certain circumstances. Specifically, final agency action for which there is no other adequate remedy in a court is subject to judicial review. 5 U.S.C. § 704. Parties who are "adversely affected or aggrieved by agency action" may seek that review. 5 U.S.C. § 702. Here, the FEC's promulgation of regulations is final agency action. *Cf. Sherwin v. Secretary of Health & Human Services,* 685 F.2d 1, 4–5 (1st Cir.1982). The plaintiffs are aggrieved persons because MRLC is a nonprofit corporation that

however, has been provided to the Court.

has published and seeks to continue publishing voter guides that take a position on issues such as abortion, and the FEC has promulgated specific regulations that directly affect what the plaintiffs [2] may say in their voter guides. Specifically, the regulations restrict organizations such as MRLC from taking a position on the issue in their voter guides. Compliance with those regulations, which the plaintiffs assert to be illegal, thus directly affects their activities. The United States Supreme Court has declared that judicial review is presumed to be available under the APA "absent some clear and convincing evidence of legislative intent to preclude review." *Japan Whaling Association v. American Cetacean Society,* 478 U.S. 221, 230 n. 4, 106 S.Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986). I find no such clear and convincing evidence in the FEC statute, either explicit or implicit in the statutory structure. It is true that the statute provides for conciliation when the FEC determines that a violation has occurred, 2 U.S.C. § 437g, and that it provides an unusual form of judicial review when the statute itself is challenged as unconstitutional, 2 U.S.C. § 437h (immediate certification to the Circuit Court of Appeals sitting *en banc*). The statute also specifically provides for judicial review when a complainant is dissatisfied with an FEC decision that no illegality has occurred. 2 U.S.C. § 437g(a)(8)(A). Although these factors, with others, lead me later to conclude that this controversy is not appropriate for declaratory and injunctive relief with respect to the proposed 1990 publications, there is not enough in this statutory structure to persuade me that Congress intended to preclude ordinary APA judicial review of the validity of the regulations. Accordingly, I have authority under 5 U.S.C. § 706(2)(C), to determine whether those regulations exceed the

FEC's authority. *Cf. Abbott Laboratories v. Gardner,* 387 U.S. 136, 139–48, 87 S.Ct. 1507, 1510–15, 18 L.Ed.2d 681 (1967).[3]

■ The statutory basis for the regulations in question is 2 U.S.C. section 441b(a). It prohibits "any corporation whatever" from making "a contribution or expenditure in connection with any election at which ... a Senator or Representative ... [is] to be voted for, or in connection with any primary election ... held to select candidates for any of the foregoing offices...." On its face, this language directly prohibits a corporation like MRLC from making any expenditures to publish its voter guides in connection with the 1990 elections.[4] I am satisfied, however, that under *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), as construed in *FEC v. Massachusetts Citizens for Life,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), the Supreme Court on constitutional grounds has explicitly limited the scope of this prohibition to "express advocacy" of the election or defeat of a clearly identified particular candidate or candidates. I do not accept the FEC's argument that this narrowing of the statutory prohibition to "express advocacy" is not binding on this Court. The Supreme Court specifically said: "We therefore *hold* that an expenditure must constitute 'express advocacy' in order to be subject to the prohibition of § 441b." 479 U.S. at 249, 107 S.Ct. at 623 (emphasis supplied); *accord, FEC v. NOW,* 713 F.Supp. 428, 433–34 (D.D.C.1989). Nothing could be clearer.

It is undisputed that the FEC has not amended its regulation on this subject to reflect the Supreme Court's statements in *FEC v. Massachusetts Citizens for Life.* The pertinent regulation is contained in 11 C.F.R. § 114.4(b)(5)[5]. That regulation per-

---

**2.** The parties have not distinguished between the two plaintiffs on standing or any other grounds.

**3.** The plaintiffs are not seeking judicial review of an advisory opinion. The reasoning of *United States Defense Committee v. FEC,* 861 F.2d 765 (2d Cir.1988) is therefore inapplicable.

**4.** 2 U.S.C. § 441b(b)(2)(C) does permit a corporation to establish a separate segregated fund for political purposes and MRLC has done so, establishing its own PAC. But the controversy before the Court involves use of MRLC's corporate funds apart from its PAC funds.

**5.** (5) *Voter guides.* (i) A corporation or labor organization may prepare and distribute to the general public nonpartisan voter guides

mits a corporation to publish voter guides in certain circumstances. Under the regulation, the critical element for the FEC is whether a voter guide is "nonpartisan." In making that determination, the Commission considers such factors as whether the wording "suggest[s] or favor[s] any position on the *issues* covered" and whether it expresses any "editorial opinion concerning the *issues* presented," 11 C.F.R. § 114.4(b)(5)(i)(C), (D) (emphasis supplied). This approach ignores the clear language of *FEC v. Massachusetts Citizens for Life* that issue advocacy by a corporation *cannot* constitutionally be prohibited and that only express advocacy covering the election or defeat of an identifiable candidate or candidates is constitutionally within the statute's prohibition.

I conclude, therefore, that the regulation, as currently promulgated with its focus on issue advocacy, is contrary to the statute as the United States Supreme Court has interpreted it and, therefore, beyond the power of the FEC.

■ I do not reach the question whether the regulation is also invalid for assertedly failing to apply *FEC v. Massachusetts Citizens for Life's* holding that the statute cannot constitutionally limit even express advocacy by certain categories of nonprofit membership corporations. In *FEC v. Massachusetts Citizens for Life*, the Supreme Court made clear that one of the "essential" factors for its holding was that the nonprofit corporation there did not receive, *and had a policy of not receiving*, any corporate funds. 479 U.S. at 263, 107 S.Ct. at 630–31. Where a nonprofit corporation did receive corporate funding, as in *Austin v. Michigan Chamber of Commerce*, —— U.S. ——, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990), the Court declared that it was not exempt from the prohibition because "[b]usiness corporations therefore could circumvent the Act's restrictions by funneling money through the Chamber's general treasury." —— U.S. ——, 110 S.Ct. at 1400, 108 L.Ed.2d at 667. Here, although the amounts received by MRLC from corporations have been comparatively modest, they are obviously not subject to any control. Without an explicit policy against contributions from corporations, the risk remains that an organization like MRLC could "serv[e] as [a conduit] for the type of direct spending that creates a threat to the political marketplace." *FEC v. Massachusetts Citizens for Life*, 479 U.S. at 264, 107 S.Ct. at 631. It is this potential for influence that supports the restriction on corpo-

consisting of questions posed to candidates concerning their positions on campaign issues and the candidates' responses to those questions. The following are factors that the Commission may consider in determining whether a voter guide is nonpartisan:

(A) The questions are directed to all of the candidates for a particular seat or office, giving the candidates equal time to respond, except that in the case of Presidential and Vice Presidential candidates the questions may be directed only to those candidates seeking the nomination of a major party or to those appearing on the general election ballot in enough States to win a majority of the electoral votes;

(B) The voter guide reprints verbatim the responses of each candidate to whom questions were sent, without any additional comment, editing, or emphasis, although the sponsoring organization may impose limitations on the number of words per response when the questions are initially sent to the candidates for their comments;

(C) The wording of the questions presented does not suggest or favor any position on the issues covered;

(D) The voter guide expresses no editorial opinion concerning the issues presented nor does it indicate any support for or opposition to any candidate or political party;

(E) The sponsor may ask each candidate to provide biographical information such as education, employment positions, offices held, and community involvement and may impose a limitation on the number of words per submission;

(F) The voter guide is made available to the general public in the geographic area in which the sponsoring organization normally operates.

(ii) A corporation or labor organization may distribute voter guides or other types of brochures describing the candidates or their positions which are obtained from a nonprofit organization which is exempt from Federal taxation under 26 U.S.C. 501(c)(3) or (4) and which does not support, endorse or oppose candidates or political parties. Publications obtained from such nonprofit organizations need not comply with the guidelines set forth at 11 CFR 114.4(b)(5)(i), but they may not favor one candidate or political party over another.

rate funding. *Id.* at 263, 107 S.Ct. at 630–31. Since MRLC clearly does not fit within the category of non-profit corporations to which the Supreme Court spoke in *Massachusetts Citizens for Life,* I conclude that the plaintiffs do not have standing to challenge the FEC regulation on this score.

■ I also do not address the plaintiffs' challenge to the FEC's asserted failure to provide a regulatory exemption reflecting the statutory exemption of "any news story, commentary, or editorial distributed through the facilities of any broadcasting station, newspaper, magazine, or other periodical publication. . . ." 2 U.S.C. § 431(9)(B)(i). I am satisfied that the MRLC does not fit within this media exemption. *See Austin v. Michigan Chamber of Commerce,* —— U.S. —— ——, 110 S.Ct. at 1401–02, 108 L.Ed.2d at 669–70 (construing similar language in a state statute to apply to "media corporations"). The plaintiffs therefore do not have standing to challenge the FEC's asserted failure in this regard.

■ Finally, I do not address the plaintiffs' challenge to 11 C.F.R. § 114.4(b)(5)(ii)—the assertion that the regulation is unconstitutionally vague in directing that certain publications "not favor one candidate or political party over another." That portion of the regulation affects the voter guides only of non-profit, tax-exempt corporations that do not "support, endorse or oppose candidates or political parties."[6] Since MRLC has established a

PAC that does support, endorse or oppose candidates, that portion of the regulation does not apply to it. Therefore, the plaintiffs do not have standing to challenge the asserted vagueness of that portion of the regulation.

## REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF AS IT APPLIES TO THE PROPOSED 1990 PUBLICATIONS

■ The plaintiffs have done what the first *Faucher* decision instructed them to do: they have obtained an FEC advisory opinion. That advisory opinion demonstrates that the FEC considers their 1988 voter guide or any substantially similar publication to be illegal under its regulations. I nevertheless conclude that their request for declaratory and injunctive relief to prevent any FEC or Attorney General enforcement action against their proposed 1990 publications is still not ripe for determination by this Court.

From the record before me, I know only that the new publications will be "substantially similar" to the 1988 publication. In determining what is "express advocacy" and what is not, however, language and format are critical. *Buckley v. Valeo* focused on explicit wording such as "vote for" and "elect."[7] I am not prepared to base declaratory and injunctive relief upon a 1988 publication, when minor changes could make that ruling wholly inapplicable to the actual 1990 publications.[8] At the

---

6. The Commission has previously held that a tax-exempt corporation becomes an organization that supports, endorses or opposes candidates if it establishes a separate, segregated PAC fund that does so. Advisory Opinion 1984–17.

7. In *Buckley v. Valeo,* the Court described this category of express advocacy as involving explicit language such as "vote for," "elect," "support," "cast your ballot for," "Smith for Congress," "vote against," "defeat," and "reject." 424 U.S. 1, 44 n. 52, 96 S.Ct. 612, 647 n. 52, 46 L.Ed.2d 659 (1976).

8. In the 1988 version there is a disclaimer stating that "the publication of the MRLC November Election Candidate Survey does not represent an endorsement of any candidate(s) by MRLC." In addition, there is nowhere any express urging to vote for a particular candidate

or party. On the other hand, the context suggests that the issue is intended to influence people's voting behavior. It is entitled "Election Issue" and is described as a "Take-along Issue for Election Day!" The viewpoints of the candidates are elaborated with specific reference to the position of the Maine Right to Life Committee and National Right to Life Committee and the publication makes clear which candidates support the views of these organizations. Slight changes in wording and format could easily affect a conclusion as to whether this is express advocacy. It seems logical, moreover, that more than slight changes in format will be necessary. The 1988 issue devoted its front page to the presidential campaign, and there is obviously no such campaign this year. Furthermore, the candidates are different from the candidates in the 1988 issue. It is difficult, therefore, to

very least, it would probably bring the parties back to court to argue whether the new publications were "substantially similar."

Equally important, the new voter guide, because of its ultimate wording and format, may not raise the FEC's ire and a decision may therefore never be needed on whether FEC enforcement against the publication is permissible.

The Attorney General has an enforcement role only if there is a knowing and willful violation that involves over $2,000. 2 U.S.C. § 437g(d)(1)(A). The plaintiffs' affidavit in their previous lawsuit said that the per issue cost of a newsletter was $628 ($350 for printing, $278 for postage). The affidavit also indicates that there are no plans to increase the circulation. There is thus no suggestion that the cost of two election issues will exceed $2,000.[9]

Finally, although I have concluded that the Court has the authority to review the validity of the FEC regulations under the APA, the statutory role of the FEC in enforcement activities gives me some pause in issuing declaratory and injunctive relief concerning particular publications. Conciliation between the FEC and any alleged law violator is a primary element of the enforcement provisions. *See* 2 U.S.C. § 437g. In the case of these proposed newsletters, there may never be any complaints by anyone (apparently no one has complained about previous MRLC newsletters); the Commission may find no violation in the ultimate wording of the newsletter; the Commission may decide that any violation is only *de minimis* and not worthy of pursuit; conciliation may lead to voluntary minor changes in wording that satisfy the Commission; or MRLC may find acceptable some other outcome—for example, a minor penalty such as refunding the amount of its corporate contributions. Only if none of these occur would an FEC enforcement action be necessary. Injunctive and declar-

atory relief now would unnecessarily restrain the FEC's discretion and would provoke hard and fast judicial line-drawing in a context where the statutory enforcement apparatus clearly favors conciliation and avoidance of litigation over specific election issues.

I am not persuaded that the plaintiffs' First Amendment arguments justify the relief they seek for 1990 publications in the face of the concerns I have enumerated. They contend that they are chilled in their freedom of speech and expression if they must publish in the context of possible enforcement proceedings. Nevertheless, they have been publishing the newsletter and voter guides in previous years despite the possibility of enforcement. As I have already stated, there is no threat, or even any suggestion, of criminal prosecution. The civil litigation threat is minimal. The penalty would be limited to a maximum of $10,000 under 2 U.S.C. section 437g(a)(6) (because the cost of the publication is far less than that). The penalty, to be set by a United States District Court, could be far less. The cost of defending such civil litigation cannot be considered a major deterrent. It is probably no more expensive than the proceedings that the plaintiffs have voluntarily undertaken in trying to secure their injunction. Finally, the likelihood of civil litigation is minimal given the conciliation requirements of the statute and the FEC's failure to take any action with respect to previous publications.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967) identified two factors for a federal court to consider in determining whether a controversy is ripe for resolution: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." The facts provided by the parties in this case simply do not make the issue of declaratory and injunctive relief fit for judi-

know what exactly is meant when it is said that the proposed publications are "substantially similar" to the 1988 publication.

**9.** Moreover, the plaintiffs have not contradicted the assertion that the Justice Department policy

(summarized in the FEC's brief at p. 21, n. 13) is only to prosecute criminally if large sums are involved and clandestine means are used to disguise their use.

72

cial decision. In a context where words and nuances may be critical, I do not have the actual language and format of the publications. Given the FEC's enforcement role, which I have outlined, such relief would unduly interfere with the overall ability of that agency to conduct investigations of alleged violations, might well delay it in gathering important information and would interfere with the congressional goal of resolving specific election disputes through conciliation. The scope of any declaratory relief or injunction would probably be confusing, given the likelihood that there will be changes in the new publications. An injunction may in fact be wholly unnecessary. Finally, any hardship to the parties in finding this issue not ripe is minimal, given the plaintiffs' historical practice of publishing despite any uncertainty.

Accordingly, the plaintiffs' request for declaratory and injunctive relief with respect to 1990 publications is *DENIED;* and the plaintiffs request for declaratory judgment is *GRANTED* as follows:

IT IS HEREBY ADJUDGED that the regulation found in 11 C.F.R. § 114.4(b)(5)(i) is invalid as not authorized by the Federal Election Campaign Act of 1971, 2 U.S.C. § 431 *et seq.*, as interpreted by the United States Supreme Court in *FEC v. Massachusetts Citizens for Life,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), to the extent that the regulation makes the permissibility of voter guides published by corporations hinge upon whether such guides are "nonpartisan" in a broad sense that includes issue advocacy rather than the narrower test of "express advocacy."

The Clerk shall enter judgment accordingly.