MAINE RIGHT TO LIFE COMMITTEE,
INC., et al., Plaintiffs,

v.

FEDERAL ELECTION COMMISSION,
et al., Defendants.

Civil No. 95–261–B–H.

United States District Court,
D. Maine.

Feb. 13, 1996.

Order Denying Motion for Reconsideration
March 8, 1996.

Daniel M. Snow, Pierce Atwood Scribner Smith Allen & Lancaster, Portland, ME, James Bopp, Jr., Paul R. Scholle, Bopp Coleson & Bostrom, Terre Haute, IN, for Plaintiffs.

Kenneth Kellner, Steven Hershkowitz, Federal Communications Commission, Washington, DC, for FEC.

David R. Collins, Evan Roth, Assistant United States Attorneys, Portland, ME, for AG.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HORNBY, District Judge.

I held a hearing on this matter on February 7, 1996. With the parties' consent, I consolidated the plaintiffs' request for temporary restraining order, the motion for preliminary injunction and the request for final declaratory and injunctive relief. See Fed. R.Civ.P. 65(a)(2). There are no disputed facts. This document contains my findings of facts and conclusions of law. See Fed. R.Civ.P. 52.

The Federal Election Campaign Act of 1971 prohibits "any corporation whatever" from making "a contribution or expenditure in connection with any election at which presidential and vice presidential electors or a Senator or Representative ... are to be voted for, or in connection with any primary election ... held to select candidates for any of the foregoing offices...." 2 U.S.C. § 441b(a). On its face, this provision amounts to a very broad prohibition against an organization like the plaintiff Maine Right to Life Committee, Inc. ("MRLC") using corporate contributions in connection with an election. The United States Supreme Court, however, has explicitly limited the scope of this statutory prohibition—on First Amendment grounds—to "express advocacy" of the election or defeat of a clearly identified candidate or candidates. Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976);

*FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986). *See Faucher v. FEC,* 743 F.Supp. 64, 68 (D.Me.1990), *aff'd,* 928 F.2d 468 (1st Cir.), *cert. denied,* 502 U.S. 820, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991). The issue in this case is whether the Federal Election Commission ("FEC") acted beyond its power in the definition it has provided for "express advocacy" as to which corporate financial support is prohibited. *See* 11 C.F.R. § 100.22. I conclude that part of the FEC's definition of "express advocacy" is beyond the FEC's power as limited by these cases.

#### BACKGROUND

In *Faucher v. FEC,* I set forth the basis for my authority to review a challenge to the legality of FEC regulations under the Administrative Procedure Act. 743 F.Supp. at 67–68. There is no reason to repeat it here.

The material facts about the MRLC have not changed appreciably since my decision in *Faucher.* MRLC, one of the two plaintiffs, is a nonprofit membership corporation exempt from federal income tax under Internal Revenue Code § 501(c)(4). It has approximately 2,000 members. MRLC is not affiliated with any political party, candidate or campaign committee. It is an ideological organization whose purpose is to promote the sanctity of human life, born and unborn; educate the public on abortion; and restore protection of the right to life for unborn children. MRLC accepts contributions from business corporations into its general treasury. MRLC publishes a quarterly newsletter with funds from its general treasury; it surveys candidates before elections to determine their stance on prolife issues and publishes the results in these newsletters; and it makes statements in the news media through such devices as press conferences, guest columns and letters to the editor on a recurring basis.

The second plaintiff is an individual, Hugh T. Corbett, who is not a member of MRLC. He reads its publications, however, and would like to continue to do so.

The plaintiffs seek a declaratory judgment that the FEC's definition of "express advoca-cy" as to which corporate financial support is prohibited under the Federal Election Campaign Act of 1971 is too broad, beyond the authority of the FEC and unconstitutionally vague; and an injunction against the FEC and the United States Attorney General to prevent enforcement of this provision.[1]

#### ANALYSIS

In the context of corporate contributions or expenditures, the FEC historically was unwilling to limit its enforcement activities to express advocacy of the election or defeat of a particular candidate or candidates. Even after *Massachusetts Citizens for Life* held that such express advocacy was the limit on prohibited activity, the FEC refused to revise its regulations to fit this standard until this court explicitly held them to be illegal, the First Circuit affirmed, and the U.S. Supreme Court denied certiorari. The FEC then promulgated draft rules on the subject in 1992, 57 Fed.Reg. 33548, but new language defining express advocacy did not become effective until October 5, 1995, 60 Fed.Reg. 52069, adding a new section 100.22 to Title 11 of the Code of Federal Regulations. This lawsuit is its first judicial review.

■ The FEC argues that I should not address the merits of the new express advocacy regulation because the MRLC has failed to seek an advisory opinion from the FEC on any communication it proposes to make under the new regulation, and that I should permit the FEC to work out the proper scope of the new regulation on a case-by-case basis. I conclude that this is not an adequate ground for avoiding decision for the following reasons.

The statute does not expressly require that an interested party make use of the advisory opinion. Instead, by its language the advisory opinion is an optional or permissive device. 2 U.S.C. § 437f(a)(2). The U.S. Supreme Court held in *McCarthy v. Madigan* that without an express requirement of exhaustion by Congress, it is within the court's sound discretion whether to require prior resort to administrative remedies. 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). It is true that in *Faucher v.*

---

1. In their Amended Complaint, the plaintiffs also attacked 11 C.F.R. § 114.4(c)(4), (5), promulgated in December of 1995, but at the hearing, the plaintiffs agreed that these proposed regulations are not yet ripe for review.

*FEC,* 708 F.Supp. 9 (D.Me.1989), Judge Cyr required the MRLC to seek an advisory opinion, but in that case there was a particular newsletter in question that could be submitted to the FEC and there was a substantial period of time until publication of the next issue. Here, the MRLC is seeking a ruling on its expressive activities generally, speech that may occur at any time in the form of interviews with reporters, letters to the editor, guest columns, etc. More important, the MRLC maintains that the FEC regulation is unconstitutional on its face. This is an attack that the FEC cannot dispose of in the advisory opinion process. (The FEC will rule only on whether a particular utterance complies with the statute or its regulations, 2 U.S.C. § 437f(a)(1), whereas the whole point of the plaintiffs' attack is that the very existence of the rule chills speech.) The plaintiff Corbett, moreover, as a listener or reader does not have the advisory opinion route open to him. Finally, time does not permit an advisory opinion in sufficient time before the presidential primary election occurs on March 5, 1996. For these reasons, I conclude that the plaintiffs are not required to seek an advisory ruling before I rule.

■ I turn, therefore, to the merits of the lawsuit. Is the FEC's regulation defining prohibited "express advocacy" constitutional? First, I quote the language of the FEC regulation under attack:

> Expressly advocating means any communication that—
> (a) Uses phrases such as "vote for the President," "re-elect your Congressman," "support the Democratic nominee," "cast your ballot for the Republican challenger for U.S. Senate in Georgia," "Smith for Congress," "Bill McKay in '94," "vote Pro–Life" or "vote Pro-choice" accompanied by a listing of clearly identified candidates described as Pro–Life or Pro–Choice,

"vote against Old Hickory," "defeat" accompanied by a picture of one or more candidate(s), "reject the incumbent," or communications of campaign slogan(s) or individual word(s), which in context can have no other reasonable meaning than to urge the election or defeat of one or more clearly identified candidate(s), such as posters, bumper stickers, advertisements, etc. which say "Nixon's the One," "Carter '76," "Reagan/Bush" or "Mondale!"; or
> (b) When taken as a whole and with limited reference to external events, such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) because—
> (1) The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and
> (2) Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candidate(s) or encourages some other kind of action.

11 C.F.R. § 100.22.

The measuring standard, as I held in *Faucher,* is set by *FEC v. Massachusetts Citizens for Life,* 479 U.S. 238, 107 S.Ct. 616. There the Court held that it would limit the reach of the federal election statute—in order to preserve its constitutionality as it concerns *corporate contributions or expenditures*—to a prohibition of express advocacy. *Id.* at 249, 107 S.Ct. at 623. *Massachusetts Citizens for Life* adopted *Buckley* 's definition of "express advocacy,"[2] namely, "communications that include explicit words of advocacy of election or defeat of a candidate," "communications that in express terms advocate the election or defeat of a clearly identified candidate for federal office." 424 U.S. at 43–44, 96 S.Ct. at 646. According to *Buckley,* "[t]his construction would restrict

---

**2.** I reject the FEC's position (advanced at oral argument and in Advisory Opinion 1992–23, 1992 WL 215532 (F.E.C.)) that *Massachusetts Citizens for Life* loosened the *Buckley* requirement. The FEC attaches great significance to the fact that *Massachusetts Citizens for Life* allowed a prohibition of language that was "marginally less direct" than the words listed in *Buckley. Id.* The actual facts in *Massachusetts Citizens for Life* were that the publication "urge[d] voters to vote for 'pro-life' candidates," identified pro-life candidates and provided their photographs. That, the Court held, was "an explicit directive: vote for the (named) candidates." 479 U.S. at 249, 107 S.Ct. at 623. It was "marginally less direct" only in the sense that it did not say "Vote for Smith," but said "vote pro-life" and then listed the pro-life candidates. *Id.* It is unsurprising that *Massachusetts Citizens for Life* concluded that those words fit the *Buckley* language like a glove. *Massachusetts Citizens for Life* provides no support for the FEC's argument that the standard has thereby been loosened or "clarified."

the [statutory prohibition] to communications containing express words of advocacy of election or defeat, such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject.'" *Id.* at 44, n. 52, 96 S.Ct. at 647, n. 52. Subpart (a) of the new regulation closely tracks this language of *Buckley* and is therefore acceptable to the plaintiffs. They seek to invalidate subpart (b).

Subpart (b) originated as follows. After *Buckley* and before the FEC had adopted its current definition of express advocacy, it brought an enforcement action in connection with the 1980 election. *FEC v. Furgatch,* 807 F.2d 857 (9th Cir.), *cert. denied,* 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 106 (1987) (The context was different in this respect: the corporate prohibition was not involved; instead, the asserted violation was an individual's failure to report to the FEC as required by another part of the statute. But the "express advocacy" standard was still at issue.). The political advocacy in question used none of *Buckley*'s prohibited words, but it was directed against President Carter and used the slogan "Don't let him do it." Because the timing was on the eve of the election, the FEC construed it as seeking the express defeat of President Carter. *Id.* The Ninth Circuit upheld the FEC's enforcement action. To do so, it enlarged ("interpret[ed] and refine[d]" or made "more comprehensive," according to the court, *id.* at 861, 862), *Buckley*'s definition of express advocacy to include speech that:

> must, when read as a whole, and with limited reference to external events, be susceptible of no other reasonable interpretation but as an exhortation to vote for or against a specific candidate. This standard can be broken into three main components. First, even if it is not presented in the clearest, most explicit language, speech is "express" for present purposes if its message is unmistakable and unambiguous, suggestive of only one plausible meaning. Second, speech may only be termed "advocacy" if it presents a clear plea for action, and thus speech that is merely informative is not covered by the Act. Finally, it must be clear what action is advocated. Speech cannot be "express

advocacy of the election or defeat of a clearly identified candidate" when reasonable minds could differ as to whether it encourages a vote for or against a candidate or encourages the reader to take some other kind of action.

*Id.* at 864. It is obvious that subpart (b) of the FEC regulations comes directly from this appellate language. The plaintiffs complain that *Furgatch* and the resulting regulation go farther than *Buckley* and *Massachusetts Citizens for Life* permit.

If the Supreme Court had not decided *Buckley* and *Massachusetts Citizens for Life* and if the First Circuit had not decided *Faucher,* I might well uphold the FEC's subpart (b) definition of what should be covered. After all, the Federal Election Campaign Act is designed to avoid excessive corporate financial interference in elections and the FEC presumably has some expertise on the question what form that interference may take based on its history of complaints, investigations and enforcement actions. Federal courts are expected to defer to an administrative agency like the FEC that Congress has established to deal with a problem that demands expertise. *See FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 37, 102 S.Ct. 38, 44–45, 70 L.Ed.2d 23 (1981). Language, moreover, is an elusive thing. The topic here is communication and it is a commonplace that the meaning of words is not fixed, but depends heavily on context as well as the shared assumptions of speaker and listener. (Consider the varying meanings of "hot," depending on whether the subject is the weather, spicy food, the currency of a particular topic, etc.) One does not need to use the explicit words "vote for" or their equivalent to communicate clearly the message that a particular candidate is to be elected. Subpart (b) appears to be a very reasonable attempt to deal with these vagaries of language and, indeed, is drawn quite narrowly to deal with only the "unmistakable" and "unambiguous," cases where "reasonable minds cannot differ" on the message. "Limited reference to external events" is hardly a radical idea. It is required even by the *Buckley* terminology. After all, how does one know that "support" or "defeat" means an election rather than an athletic contest or some other event without considering the external context of a federal election with specific candidates?

But there is another policy at issue here and it is one that I believe the Supreme Court and the First Circuit have used to trump all the arguments suggested above. Specifically, the Supreme Court has been most concerned not to permit intrusion upon "issue" advocacy—discussion of the issues on the public's mind from time to time or of the candidate's positions on such issues—that the Supreme Court has considered a special concern of the First Amendment. As the Court said in *Massachusetts Citizens for Life:*

> The rationale for [*Buckley*'s] holding was: "[T]he distinction between discussion of issues and candidates and advocacy of election or defeat of candidates may often dissolve in practical application. Candidates, especially incumbents, are intimately tied to public issues involving legislative proposals and governmental actions. Not only do candidates campaign on the basis of their positions on various issues, but campaigns themselves generate issues of public interest."
>
> . . . .
>
> *Buckley* adopted the "express advocacy" requirement to distinguish discussion of issues and candidates [protected under the First Amendment] from more pointed exhortations to vote for particular persons [properly regulated by the FEC].

479 U.S. at 249, 107 S.Ct. at 623. In other words, FEC restriction of election activities was not to be permitted to intrude in any way upon the public discussion of issues. What the Supreme Court did was draw a bright line that may err on the side of permitting things that affect the election process, but at all costs avoids restricting, in any way, discussion of public issues. The Court seems to have been quite serious in limiting FEC enforcement to *express* advocacy, with examples of words that directly fit that term. The advantage of this rigid approach, from a First Amendment point of view, is that it permits a speaker or writer to know from the outset exactly what is permitted and what is prohibited. In the stressful context of public discussions with deadlines, bright lights and cameras, the speaker need not pause to debate the shades of meaning in language. The result is not very satisfying from a realistic communications point of view and does not give much recognition to the policy of the election statute to keep corporate money from influencing elections in this way, but it does recognize the First Amendment interest as the Court has defined it. *Faucher,* 928 F.2d 468, confirms this reading. First, the First Circuit announced that the deference rule "no longer applies . . . once the Supreme Court has spoken on the issue. . . . It is not the role of the FEC to second-guess the wisdom of the Supreme Court." 928 F.2d at 471. Second, the First Circuit read *Buckley* as "adopting a bright-line test that expenditures must 'in express terms advocate the election or defeat of a candidate' in order to be subject to limitation." *Id.*

As the plaintiffs persuasively argued at the hearing, *Furgatch,* the source of subpart (b), is precisely the type of communication that *Buckley, Massachusetts Citizens for Life* and *Faucher* would permit and subpart (b) would prohibit. "Don't let him do it" can be a call for all sorts of actions—write the President or call the White House to change the policy; urge your Senator or Representative to use his or her influence; call a radio talk show host—all actions that are part of public issue advocacy; or it can be interpreted on the eve of the election as calling for nothing but the unseating of the President. Directly contrary to the First Circuit in *Faucher* (finding that the Supreme Court had created a "bright-line test," 928 F.2d at 471), the Ninth Circuit reasoned that the Supreme Court did *not* "draw a bright and unambiguous line." 807 F.2d at 861. As a result, *Furgatch* allowed the FEC to prohibit the speech (recognizing it as "a very close call," *id.* at 861); *Buckley, Massachusetts Citizens for Life* and *Faucher* call for letting it go forward in order to preserve the discussion of public issues even at the risk that it is used to elect or defeat a candidate.

The Explanation and Justification issued on July 6, 1995, reveals that the FEC does indeed intend subpart (b) to have just such breadth:

> Communications discussing or commenting on a candidate's character, qualifications, or accomplishments are considered express advocacy under new section 100.22(b) if, in context, they have no other reasonable meaning than to encourage actions to elect or defeat the candidate in question. The revised rules do not establish a time frame

in which these communications are treated as express advocacy. Thus, the timing of the communication would be considered on a case-by-case basis.

60 Fed.Reg. at 35295. In other words, what is issue advocacy a year before the election may become express advocacy on the eve of the election and the speaker must continually re-evaluate his or her words as the election approaches.

That is sufficient evidence of First Amendment "chill" to entitle the plaintiffs to relief. *See, e.g., Buckley,* 424 U.S. at 76–77, 96 S.Ct. at 662 (I have also examined the various statements the MRLC has made in the past as attached to its Amended Complaint and some of them on election eve might well meet the subpart (b) definition. The MRLC engaged in such speech until the effective date of the new FEC definition, October 5, 1995, and then stopped. That too is sufficient evidence of chill.)

### CONCLUSION

For these reasons I conclude that 11 C.F.R. § 100.22(b) is contrary to the statute as the United States Supreme Court and the First Circuit Court of Appeals have interpreted it and thus beyond the power of the FEC. I do not address the plaintiffs' argument that the subpart is also void for vagueness.

For the reasons I listed in *Faucher,* all other injunctive and declaratory relief is DE-NIED. I GRANT the Attorney General's motion to dismiss. The Attorney General takes action only upon a Federal Election Commission referral. No such action is threatened or even contemplated here.

Accordingly, the plaintiffs' request for declaratory judgment is GRANTED as follows: It is hereby ADJUDGED that the regulation found in 11 C.F.R. § 100.22(b) is invalid as not authorized by the Federal Election Campaign Act of 1971, 2 U.S.C. § 431 *et seq.,* as interpreted by the United States Supreme Court in *Massachusetts Citizens for Life,* 479 U.S. 238, 107 S.Ct. 616, and by the United States Court of Appeals for the First Circuit in *Faucher,* 928 F.2d 468, because it extends beyond express advocacy. The Clerk shall enter judgment accordingly.

So ORDERED.

### ORDER ON FEDERAL ELECTION COMMISSION'S MOTION FOR RECONSIDERATION OR RELIEF UNDER RULES 59(e) AND 60(b)

The motion for reconsideration or relief is DENIED. I inquired specifically of the FEC's lawyer at the hearing what factual issues were in dispute so that I could assess whether consolidation of the hearing with the trial on the merits was appropriate under Fed. R.Civ.P. 65(a)(2). The plaintiffs had moved from the outset for such a consolidation and the FEC had filed no written objection, despite the requirements of Local Rule 19. The FEC's lawyer was unable to point to a single factual issue in dispute and it was therefore apparent that only legal issues remained to be resolved. As a result, there was absolutely no reason to delay matters for a trial on the merits.

The FEC had a full opportunity to argue the legality of its regulation and briefed the issue fully. It is specious to maintain that its legal argument should be materially different when the question is success on the merits rather than likelihood of success on the merits. The FEC has pointed me to no requirement that a certified administrative record of its rulemaking proceeding be available to the court before making a decision. In its briefing, the FEC cited extensive portions of the rulemaking history and my decision referred to this history. It is true that I did not have the thousands of pages that the FEC has now filed, but this was not an adjudicative proceeding where I was reviewing an administrative record. Instead, the issue before me was whether the FEC's rule as promulgated was consistent with the United States Supreme Court decisions in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) and *FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986), and the First Circuit decision in *Faucher v. FEC,* 928 F.2d 468 (1st Cir.1990), *cert. denied,* 502 U.S. 820 (1991). My opinion candidly indicated that I believed the FEC had the better of the argument on its regulation so far as the logic of language is concerned, but that the statements by the U.S. Supreme Court and the First Circuit Court of Appeals in the relevant decisions foreclosed the option the FEC had elected. There is no suggestion in the FEC's motion papers how the rulemaking record would or should alter that conclusion, which

derives from the language of the court decisions, not the administrative record.

Finally, even now, the FEC declines to tell the court what new arguments it would make if it were afforded the opportunity to take another bite at the apple. Clearly, it was incumbent on the FEC to show me that granting this motion for reconsideration or relief has some point and is not a futile exercise. The absence of such a showing makes the motion appear to be a procedural ploy that would only engender delay in the inevitable outcome.

For all these reasons, the motion is **DENIED**.

**SO ORDERED.**