Stenson v. McLaughlin                    CV-00-514-JD   08/24/01
                    UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Roger Stenson, Executive
Director and Member,
Citizens for Life, Inc., et al.

      v.                              Civil No. 00-514-JD
                                      Opinion No. 2001 DNH 159
Philip McLaughlin, New Hampshire
Attorney General, et al.


                            O R D E R


     The plaintiffs, Citizens for Life, Inc. and its Executive

Director, Roger Stenson, bring suit challenging the

constitutionality of three of New Hampshire's election statutes,

N.H. Rev. Stat. Ann. ("RSA") 664:2, 664:14, and 664:16.  The

plaintiffs contend that these statutes violate the First

Amendment by regulating issue advocacy and by compelling speech

by parties engaging in issue advocacy.

     The plaintiffs initially filed a motion for a preliminary

injunction.  After conferring with the parties, the court

consolidated the motion for preliminary injunction with a

consideration of the merits of the case.  See Procedural Order,

Nov. 7, 2001.  The court's jurisdiction to address the merits of

the case is based on 28 U.S.C. §§ 1331 and 1343(a), as the

plaintiffs' claims arise under 42 U.S.C. § 1983 and the First and

Fourteenth Amendments.  There are no factual disputes material to

the merits of the case, and the parties essentially present the court with an issue of law, which the court resolves in this order.

## Background

The three statutes at issue in this case regulate communications associated with political campaigns and elections. RSA 664:2 defines the terms used in the various statutes. "Political advertising" is defined as "any communication . . . which expressly or implicitly advocates the success or defeat of any party, measure or person at any election." RSA 664:2, VI (West Supp. 2000). RSA 664:14 requires that every political advertisement disclose the name of the political committee or person responsible for it.[1] RSA 664:16 requires that

---

[1]The relevant text of the statute reads:

> All political advertising shall be signed . . . with the names and addresses of the candidate, his fiscal agent, or the name and address of the chairman or the treasurer of a political committee, or the name and address of a natural person, according to whether a candidate, political committee, or natural person is responsible for it. Said signature shall clearly designate the name of the candidate, party or political committee by or on whose behalf the same is published or broadcast.

RSA 664:14, I (West Supp. 2000).

"[p]olitical advertising printed in newspapers, periodicals or billboards shall be marked . . . 'Political Advertising.'" RSA 664:16 (West Supp. 2000). A violator of RSA 664:14 or 664:16 may be subject to criminal prosecution by the New Hampshire Attorney General. See RSA 664:18 (1996).

Citizens for Life, Inc. ("Citizens") is a non-profit organization that attempts to educate the public by publicizing information concerning abortion and related issues. Roger Stenson is the Executive Director of Citizens. Citizens has a practice of running advertisements, typically around election time, that mention candidates for political office and those candidates' positions or voting records on legislation regulating abortion.

Citizens alleges that it intends to run advertisements which would not expressly advocate the election or defeat of any particular candidate, but would implicitly advocate the success or defeat of candidates, and would therefore fall under the definition of "political advertising" in RSA 664:2. Citizens also alleges that it does not intend to abide by the disclosure requirements of RSA 664:14 and 664:16 when publishing these advertisements. Citizens asserts that it fears criminal prosecution for its intended actions, and that it has chosen in the past not to run advertisements containing implicit advocacy

3

for fear of prosecution.

Citizens has run some advertisements that complied with RSA 664:14 and 664:16, and others that did not. Citizens does not allege that the New Hampshire Attorney General has prosecuted it in the past for violating these statutes. It does allege that the Attorney General's Office issued Citizens an advisory opinion concerning one proposed advertisement, which indicated that the advertisement would have to comply with RSA 664:14 and other provisions related to political advertising. The advisory opinion also indicated that the proposed advertisement would be considered implicit, not express, advocacy.

The plaintiffs seek a declaratory judgment that RSA 664:2, VI, 664:14, and 664:16 are unconstitutional. They also seek a permanent injunction precluding the defendants from enforcing these statutes, and request an award of costs and attorney's fees associated with bringing this action.

## Discussion

### I.   Standing

The defendants argue that the plaintiffs lack standing to pursue their claims because they cannot show that they have suffered an injury. The court considers this issue first, as a lack of standing would preclude the court from proceeding to a

4

consideration of the merits of the case.  See Warth v. Seldin,
422 U.S. 490, 498 (1975); R.I. Ass'n of Realtors, Inc. v.
Whitehouse, 199 F.3d 26, 30 (1st Cir. 1999).

To satisfy the constitutional requirements of standing, the
plaintiffs must present a justiciable case or controversy.  See
U.S. Const. art. III, § 2.  "[T]he party who invokes a federal
court's authority must show that (1) he or she personally has
suffered some actual or threatened injury as a result of the
challenged conduct; (2) the injury can fairly be traced to that
conduct; and (3) the injury likely will be redressed by a
favorable decision from the court."  N.H. Right to Life Political
Action Comm. v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996) (citing
Valley Forge Christian Coll. v. Ams. United for Separation of
Church & State, Inc., 454 U.S. 464, 472 (1982)).  The second and
third requirements are easily met in this case.  Any injury
suffered by the plaintiffs is related to the defendants'
enforcement of the challenged statutes, and the declaratory and
injunctive relief requested by the plaintiffs would redress that
injury.  See R.I. Ass'n of Realtors, 199 F.3d at 30; N.H. Right
to Life, 99 F.3d at 13.

In the context of a pre-enforcement challenge to a statute
based on First Amendment grounds, the existence of either of two
types of injury is sufficient to satisfy the first constitutional

5

requirement of the standing analysis.  A plaintiff may show that a threat of enforcement exists, or that he is chilled from exercising his First Amendment right to free speech.  See N.H. Right to Life, 99 F.3d at 13-14.  In either case, the crucial question is whether a credible threat of prosecution exists, judged by an objective standard.  See id. at 14.  "In a pre-enforcement challenge to a statute carrying criminal penalties, standing exists when 'the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.'"  Id. (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).  Here, the plaintiffs have alleged that they intend to publish advertisements that may be said to implicitly advocate the election or defeat of a candidate, and that do not comply with RSA 664:14 and 664:16.  The parties dispute whether the plaintiffs face a credible threat of prosecution.

The First Circuit has said that the credible threat standard is "quite forgiving" in the First Amendment context, and that such a threat may be assumed to exist "in the absence of compelling contrary evidence," in cases where the statute is not moribund.  N.H. Right to Life, 99 F.3d at 14, 15.  The defendants argue that the statutes at issue have never been enforced

6

criminally against inadvertent failure to comply with their disclosure requirements. However, it is clear that this statement does not address the Attorney General's likelihood of prosecuting parties who, as the plaintiffs intend, knowingly omit the disclosures from political advertisements.

Likewise, the fact that the plaintiffs previously have violated RSA 664:14 and 664:16 without suffering prosecution does not mean that the Attorney General would refrain from such prosecution in the future. See R.I. Ass'n of Realtors, 199 F.3d at 32-33. In light of the Attorney General's advisory opinion to the plaintiffs, advising them that any political advertisements must comply with the requirements of RSA 664:14 and other provisions, it appears that the Attorney General has not abandoned the possibility of future enforcement of these statutes. See id. Indeed, the fact that the Attorney General has sought to defend this action leads to the reasonable conclusion that the statutes are not viewed by him as being moribund and are still subject to being enforced. Accordingly, the plaintiffs have established a credible threat of future prosecution, and satisfy the constitutional requirements for standing.

In addition to the constitutional requirements, the court must weigh prudential concerns when analyzing questions of

7

standing.  See N.H. Right to Life, 99 F.3d at 15; Vote Choice, Inc. v. DiStefano, 4 F.3d 26, 37 (1st Cir. 1993).  The parties do not address these concerns in their briefs.  However, the facts of the case do not suggest that any of these concerns would preclude standing in this case.  Briefly, the plaintiffs' complaint clearly implicates First Amendment interests, presents claims based on the legal rights of the plaintiffs, and presents particularized grievances on the part of the plaintiffs.  See N.H. Right to Life, 99 F.3d at 15-16; Vote Choice, 4 F.3d at 37.  Accordingly, the court finds that the plaintiffs have standing to pursue their claims, and the court has jurisdiction to consider the merits of the case.

II.  Merits

The plaintiffs contend that the statutes are facially unconstitutional because they regulate political communications that are considered issue advocacy, they are impermissibly vague, and they compel speakers engaged in issue advocacy to disclose information involuntarily.

A.   Regulation of Issue Advocacy

The breadth of permissible regulation of political speech was outlined in Buckley v. Valeo, 424 U.S. 1 (1976).  Buckley

8

announced that statutes could regulate political communications without violating the First Amendment only if the communications used "explicit words of advocacy of election or defeat of a candidate." Buckley, 424 U.S. at 43. The Court further described these explicit words in a footnote as "express words of advocacy of election or defeat, such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject.'" Id. at 44 n.52. The Court reaffirmed its commitment to the express advocacy test in Fed. Election Comm'n v. Mass. Citizens for Life, Inc., 479 U.S. 238, 249 (1986).

The First Circuit has followed Buckley and Mass. Citizens for Life by using the express advocacy standard in cases concerning regulation of political speech. See Me. Right to Life Comm. v. Fed. Election Comm'n, 98 F.3d 1 (1st Cir. 1996) (affirming holding and rationale in lower court's opinion, 914 F. Supp. 8 (D. Me. 1996)); Faucher v. Fed. Election Comm'n, 928 F.2d 468, 470-71 (1st Cir. 1991). In doing so, the First Circuit has recognized the Supreme Court's dedication to protecting issue advocacy from regulation. See Me. Right to Life, 914 F. Supp. at 12. "In our view, trying to discern when issue advocacy in a voter guide crosses the threshold and becomes express advocacy invites just the sort of constitutional questions the Court

9

sought to avoid in adopting the bright-line express advocacy test in Buckley." Faucher, 928 F.2d at 472. The bright-line express advocacy standard protects the First Amendment interests at stake, and allows potential political speakers to accurately assess the types of speech that may be restricted.

RSA 664:2, VI defines "political advertising" as "any communication . . . which expressly or implicitly advocates the success or defeat of any party, measure or person at any election." The plaintiffs contend that by including the word "implicitly" in RSA 664:2, VI, the New Hampshire legislature has impermissibly extended regulation of political advertising beyond the limits of express advocacy into the realm of issue advocacy. The use of the phrase "expressly or implicitly" creates a clear distinction between two forms of expression and leads to the inevitable conclusion that "implicitly" refers to some kind of advocacy other than express advocacy. On its face, this language goes beyond the express advocacy limitations of Buckley and Mass. Citizens for Life. The defendants argue that the court can, and should, interpret the word "implicitly" narrowly in a manner that comports with constitutional concerns and saves the statute from facial invalidity.

A similar argument was made to the Second Circuit in Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376 (2d Cir.

10

2000).  That case, like the present one, dealt with statutes requiring certain disclosures on political advertisements, which the Vermont statute defined as "communication[s] . . . which expressly or implicitly advocate [] the success or defeat of a candidate."  Vt. Right to Life Comm., 221 F.3d at 387.  The defendants in that case argued that the court should interpret "implicitly" using a minor dictionary definition of implicit as "being without doubt or reservation."  Id.  The defendants also argued that because legislatures are presumed to know the law, courts should interpret statutes in such a way that avoids any constitutional problem.  See id. at 388.  The defendants in this case make essentially the same arguments.

The Second Circuit rejected a narrowing construction of "implicitly."  This court finds the Second Circuit's reasoning persuasive.  To apply a narrowing construction to a state statute, "the statute must be 'readily susceptible' to the limitation."  Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 397 (1988).  Because RSA 664:2, VI uses the word "implicitly" in the context of the phrase, "expressly or implicitly advocates," it is not readily susceptible to an interpretation of "implicitly" as meaning "without doubt." Instead, "implicitly" is used as an alternative to "expressly," and in this sense, it is interpreted to mean "tacitly."  See Vt.

11

Right to Life, 221 F.3d at 388. Therefore, the definition of "political advertising" in RSA 664:2, VI encompasses more than express advocacy.

The defendants argue that the court should not follow the reasoning in Vt. Right to Life because New Hampshire's statutes have a longer legislative history, and because the Vermont case concerned application of those statutes to a newsletter, not a newspaper of general circulation. The court does not view these distinctions as material to its analysis of the New Hampshire statutes.[2]

Furthermore, the plaintiffs argue that the extent of communication covered by the word "implicitly" is unknowable and the statute is consequently impermissibly vague. The vagueness doctrine, based in the due process clause of the Fourteenth Amendment, provides a separate ground for unconstitutionality, but involves some of the same concerns as the First Amendment question. See Buckley, 424 U.S. at 77. The Supreme Court's insistence on a bright-line test for express advocacy is grounded in the need for speakers to know for certain when they may expose themselves to criminal penalties, without having to rely on their own judgment or the judgment of their listeners or readers. See

---

[2]The court notes that the New Hampshire statutes have existed in their current or similar form since 1979.

12

_Iowa Right to Life Comm., Inc. v. Williams_, 187 F.3d 963, 969 (8th Cir. 1999). A statute that fails to adhere to the express advocacy standard "creates uncertainty and potentially chills discussion of public issues," thereby raising a First Amendment problem. _Id._ at 970.

The word "implicitly" in RSA 664:2, VI indicates that the Attorney General will view some political communications that do not constitute express advocacy as political advertising that is subject to the disclosure requirements. It is unclear what exactly would constitute implicit advocacy, however, leaving potential speakers unable to determine whether their intended speech would violate the law. _See Vt. Right to Life_, 221 F.3d at 387. This uncertainty leads to the conclusion that the statute is impermissibly vague. _See id._

The court concludes that RSA 664:2, VI, 664:14, and 664:16 are facially unconstitutional, 1) because the disclosure requirements of RSA 664:14 and 664:16, applied to issue advocacy as a result of the word "implicitly" contained in RSA 664:2, VI, violate _Buckley_ and its derivative case law, and, 2) because the word "implicitly" is impermissibly vague. Next, the court proceeds to consider whether the offending statutory language may be severed or whether the statutes must be struck down in their entirety.

13

B.   Severability

Whether language that renders a statute facially unconstitutional may be severable is a question of state law. See Leavitt v. Jane L., 518 U.S. 137, 139 (1996); R.I. Ass'n of Realtors, 239 F.3d at 106.  The New Hampshire Supreme Court has stated,

> In determining whether the valid provisions of a statute are severable from the invalid ones, we are to presume that the legislature intended that the invalid part shall not produce entire invalidity if the valid part may be reasonably saved.  We must also determine, however, whether the unconstitutional provisions of the statute are so integral and essential in the general structure of the act that they may not be rejected without the result of an entire collapse and destruction of the structure.

Claremont Sch. Dist. v. Governor, 144 N.H. 210, 217 (1999) (quotations omitted).  The court considers whether "the legislature would have enacted the [statute] without the offending provision."  Id. at 218 (quotation omitted).  "While there is a presumption in favor of severability, the principle is not to be applied if it gives a statute meaning the legislature did not intend, either by addition or subtraction from its terms."  Id.

The New Hampshire legislature included in chapter 664 a severability section, which reads,

> If any provision of this chapter or the application thereof to any person or circumstance is held invalid,

14

> the invalidity does not affect any other provisions or applications of the chapter which can be given effect without the invalid provisions or applications, and to this end the provisions of this chapter are severable.

RSA 664:23 (1996). Though the inclusion of the severability clause sheds some light on the legislature's intent, it is only one factor the court must consider. "Severability clauses, though probative of legislative intent, are not conclusive." Ackerley Communications of Mass., Inc. v. City of Cambridge, 135 F.3d 210, 215 (1st Cir. 1998).

In this case, removal of the words "or implicitly" from RSA 664:2, VI would leave a statute that defines "political advertising" as communication "which expressly advocates the success or defeat of a party, measure or person at any election." This revision results in a statute that is textually sound and does not impermissibly regulate issue advocacy. It would also leave a statute that continues to effectively address the legislature's legitimate concerns about the influence of contributions to political campaigns. It is highly unlikely that the legislature, unable to impose disclosure requirements on issue advocacy, would have forgone the opportunity to impose such requirements on express advocacy. Furthermore, the severability clause is indicative of the legislature's intent with respect to this question.

The plaintiffs urge the court to find severability inappropriate because RSA 664:14 and 664:16, which impose disclosure requirements on political advertising, would unconstitutionally compel speech even in conjunction with a modified definition of political advertising that included only express advocacy. Nowhere in the complaint do the plaintiffs claim that RSA 664:14 and 664:16 are unconstitutional because of their actual or potential application to express advocacy.[3] The complaint focuses only on the unconstitutional application of the statutes to issue advocacy, and the concomitant effect on issue advocacy groups such as Citizens.

The plaintiffs may not introduce an entirely different basis for invalidating the statutes in a reply memorandum.[4] The court's decision to sever the words "or implicitly" addresses the constitutional claims related to issue advocacy identified by the

---

[3]In their complaint, the plaintiffs claim that RSA 664:2, VI is unconstitutional because it regulates issue advocacy (Count I); that RSA 664:2, VI and 664:14 are unconstitutional because they "compel the speech of issue advocacy groups such as Citizens . . . by compelling them to engage in otherwise regulable express advocacy" (Count II); that RSA 664:2, VI and 664:16 are unconstitutional because they "compel the speech of issue advocacy groups such as Citizens . . . by compelling them to engage in speech it would otherwise avoid" (Count III); and that RSA 664:2, VI is void for vagueness (Count IV).

[4]The first time the plaintiffs presented this claim in a developed form was in their reply brief on the merits, in response to the severability issue raised by the defendants.

plaintiffs in their complaint and initial memorandum.  Other constitutional claims not raised in the complaint that relate to these statutes are not properly before this court, and the court does not consider the validity of the statutes as applied to express advocacy.

III. <u>Motion to Certify Questions to New Hampshire Supreme Court</u>

The defendants have moved the court to certify several questions of law to the New Hampshire Supreme Court, including whether the definition of political advertising is capable of interpretation that is not void for vagueness, if any words that may be vague in RSA 664:2, VI are severable, whether the disclosure requirements of RSA 664:14 and 664:16 are overbroad, and if so, whether they are severable.[5]

As discussed in this opinion, the court finds that the word "implicitly" in RSA 664:2, VI is not readily susceptible to a narrowing construction that would save the statute from facial invalidity.  <u>See</u> <u>Bellotti v. Baird</u>, 428 U.S. 132, 146-47 (1976) (noting abstention pending state court's construction of statute

---

[5]The court notes that jurisdiction in this case is federal question jurisdiction based on constitutional claims, not diversity jurisdiction.  The question of certification is more properly analyzed under abstention doctrine, which the parties do not address in their briefs.  <u>See</u> <u>R.R. Comm'n of Tex. v. Pullman Co.</u>, 312 U.S. 496 (1941).

17

is appropriate only when statute is susceptible of construction that would resolve or change federal constitutional problem). It is therefore unnecessary to delay proceedings in this court for certification, and it would be imprudent to do so without a demonstrated need in the context of a pre-enforcement facial challenge based on First Amendment grounds. See Vt. Right to Life, 221 F.3d at 385-86.

As for the severability of the phrase "or implicitly," New Hampshire law is sufficiently clear on this subject, especially in light of the severability clause in RSA 664:23, for this court to predict how the New Hampshire Supreme Court would resolve the question, without resorting to certification.

The other questions raised by the defendants for certification either are resolved by the relief ordered by the court, or are not properly before the court, as discussed earlier.

18

<u>Conclusion</u>

The court concludes that RSA 664:2, VI, 664:14, and 664:16 are facially unconstitutional for the reasons discussed in this opinion. The court also concludes that the phrase "or implicitly" in RSA 664:2, VI is severable, and declares that RSA 664:2, VI, 664:14, and 664:16 are unconstitutional to the extent that they regulate political communication that implicitly advocates, but does not expressly advocate, the success or defeat of any party, measure or person at any election. Accordingly, the court strikes the language "or implicitly" from RSA 664:2, VI as indicated below:

> "Political advertising" means any communication, including buttons or printed material attached to motor vehicles, which expressly ~~or implicitly~~ advocates the success or defeat of any party, measure or person at any election.

In addition, the court permanently enjoins the defendants from enforcing RSA 664:14 and 664:16 against any individual or organization engaging in political advertising that implicitly advocates the success or defeat of any party, measure or person at any election.

The defendants' motion for certification is denied (document no. 13). The defendants' request for oral argument is also denied (document no. 15).

The plaintiffs request costs and attorney's fees pursuant to

19

42 U.S.C. § 1988. Neither side has briefed the issue. The plaintiffs are provided an opportunity to file a properly supported motion on or before September 14, 2001 and the defendants shall file a response by September 28, 2001.

     SO ORDERED.


                                    _____
                                    Joseph A. DiClerico, Jr.
                                    District Judge

August 24, 2001

cc:  Eileen A. Nevins, Esquire
     Eric C. Bohnet, Esquire
     Nancy J. Smith, Esquire
     Jed Z. Callen, Esquire