**RIGHT TO LIFE OF DUTCHESS COUNTY, INC., Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

No. 97 CIV. 2614(SHS).

United States District Court,
S.D. New York.

June 1, 1998.

---

Paul R. Scholle, Bopp, Coleson & Bostrom, Terre Haute, IN, for Plaintiff.

William S. Shackelford, Federal Election Commission, Washington, DC, for Defendant.

## OPINION

STEIN, District Judge.

The issue for resolution is whether a Federal Election Commission ("FEC") regulation, which defines the scope of the prohibition on corporate "express advocacy" of the election or defeat of candidates for federal office, is consistent with the strictures imposed by the United States Supreme Court to avoid impinging on rights of expression protected by the First Amendment. This Court finds that the regulation is impermissibly overbroad in light of the Supreme Court holdings in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), and *FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986) (*"MCFL"*).

Specifically, the FEC regulation, which is set forth at 11 C.F.R. § 100.22(b), defines the term "expressly advocating" for purposes of the Federal Election Campaign Act of 1971, *as amended,* 2 U.S.C. § 431 *et seq.* ("FECA"). In this action, plaintiff Right to Life of Dutchess County, Inc. ("RLDC") seeks (1) a declaratory judgment that the FEC's definition of "express advocacy" is invalid either because it is unconstitutionally overbroad in that it prohibits protected First Amendment speech, or because it is unconstitutionally vague and, thus, violative of the Fifth Amendment's due process guarantee, and (2) an injunction prohibiting the FEC from enforcing the regulation. The parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, plaintiff's motion is granted, defendant's motion is denied, 11 C.F.R.

§ 100.22(b) is declared invalid, and the FEC is enjoined from enforcing 11 C.F.R. § 100.22(b).

## I. *Background*

### A. *The challenged regulation*

Federal election law bars "any corporation whatever" from making expenditures "in connection with" any presidential or congressional election. *See* 2 U.S.C. § 441b(a). While the statutory prohibition is extremely broad on its face, First Amendment concerns have led the Supreme Court to limit its reach to prohibit solely the "express advocacy" of the election or defeat of a clearly identified candidate or candidates. *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *MCFL,* 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986).

More specifically, the Supreme Court has found that corporate expenditures for political communications violate 2 U.S.C. § 441b(a) only where the communications employ "express" or "explicit" words of advocacy, such as "vote for," "elect," "support," "cast your ballot for," "Smith for Congress," "vote against," "defeat," or "reject." *See MCFL,* 479 U.S. at 249, 107 S.Ct. 616 (quoting *Buckley v. Valeo,* 424 U.S. at 44 n. 52, 96 S.Ct. 612); *see also Buckley v. Valeo* 424 U.S. at 80 n. 108, 96 S.Ct. 612. Lower courts, with the notable exception of the United States Court of Appeals for the Ninth Circuit, have adhered to that narrow, bright-line reading of the "express advocacy" standard. *See FEC v. Central Long Island Tax Reform Immediately Committee,* 616 F.2d 45 (2d Cir.1980) (en banc) ("CLITRIM") (section 441d "clearly establish[es] that, contrary to the position of the FEC, the words 'expressly advocating,' mean exactly what they say"); *FEC v. Survival Educ. Fund, Inc.,* No. 89 Civ. 0347, 1992 WL 42220, *3, 1994 U.S. Dist. LEXIS 210, *6 (S.D.N.Y.), *aff'd in part and rev'd in part on alt. grounds,* 65 F.3d 285 (2d Cir.1995). *See also FEC v. Christian Action Network, Inc.,* 110 F.3d 1049, 1051–53 (4th Cir.1997); *Maine Right to Life Comm., Inc. v. FEC,* 914 F.Supp. 8, 13 (D.Me.), *aff'd,* 98 F.3d 1 (1st Cir.1996); *Faucher v. FEC,* 928 F.2d 468 (1st Cir.1991). *But see FEC v.*

*Furgatch,* 807 F.2d 857, 862–63 (9th Cir.1987) (making "more comprehensive" *Buckley*'s definition of "express advocacy" to include speech that, "when read as a whole, and with limited reference to external events, [is] susceptible of no other reasonable interpretation but as an exhortation to vote for or against a specific candidate").

Nevertheless, the FEC has historically been reluctant to limit its enforcement activities to "express advocacy," as that phrase has been interpreted by the Supreme Court, and has only recently drafted language to define the term.[1] According to the FEC regulation at issue:

> Expressly advocating means any communication that—

> (a) Uses phrases such as "vote for the President," "re-elect your Congressman," "support the Democratic nominee," "cast your ballot for the Republican challenger for U.S. Senate in Georgia," "Smith for Congress," "Bill McKay in '94," "vote Pro-Life" or "vote Pro-Choice," accompanied by a listing of clearly identified candidates described as Pro-Life or Pro-Choice, "vote against Old Hickory," "defeat" accompanied by a picture of one or more candidate(s), "reject the incumbent," or communications of campaign slogan(s) or individual word(s), which in context can have no other reasonable meaning than to urge the election or defeat of one or more clearly identified candidate(s), such as posters, bumper stickers, advertisements, etc. which say "Nixon's the One," "Carter '76," "Reagan/Bush" or "Mondale!"; or

> (b) When taken as a whole and with limited reference to external events, such as the proximity to the election, could only be interpreted by a reasonable person as containing advocacy of the election or defeat of one or more clearly identified candidate(s) because—

> (1) The electoral portion of the communication is unmistakable, unambiguous, and suggestive of only one meaning; and

> (2) Reasonable minds could not differ as to whether it encourages actions to elect or defeat one or more clearly identified candi-

---

1. The current version of 11 C.F.R. § 100.22 became effective on October 5, 1995.

date(s) or encourages some other kind of action.

11 C.F.R. § 100.22. Plaintiffs do not dispute that subpart (a) of the regulation is consistent with the language that the Supreme Court used to describe the permissible scope of the statutory prohibition in *Buckley v. Valeo* and *MCFL*. Plaintiffs do, however, seek to invalidate subpart (b), which both parties agree tracks the language employed by the Ninth Circuit in *FEC v. Furgatch*. *See Maine Right to Life Comm., Inc. v. FEC,* 914 F.Supp. at 10–11 (describing the origin of subpart (b)).

### B. *Plaintiff's proposed communications*

RLDC is a New York not for profit corporation of approximately 1500 members founded to advocate what it characterizes as its pro-life position on issues such as abortion and euthanasia. It is not affiliated with any political party, candidate or campaign committee. To achieve its purpose, RLDC frequently communicates its views to the general public via, among other means, newsletters, voting guides, letters to the editor, editorials, press releases and public statements. These communications frequently refer to candidates for federal office and include discussions of their positions on various issues of concern to the organization. (Decl. of Helen Westover, ¶¶ 2, 7, 11).

For example, RLDC's August, 1996 edition of its newsletter, entitled *Right to Life,* contains a "SURVEY OF CANDIDATES in the REPUBLICAN CONGRESSIONAL PRIMARY ELECTION (September 10th, 1996)." (Aug.1996 *Right to Life* Newsletter, appended to Westover Decl. as Exh. A, at 4). The survey is, in essence, a "voting guide" which sets forth in tabular form the positions on ten pro-life issues of candidates for the Republican nomination for New York's 19th and 26th Congressional Districts. The positions of incumbents are based on their votes in the House of Representatives. The characterizations of challengers' positions are based on the answers given to questions relating to each of the topics.

There is little disputing the fact that these publications are timed to influence voters when they go to the polls. Illustrative is the September 10, 1996 *Right to Life* newsletter, which states: "Unfortunately ... Congresswoman Sue Kelly not only voted against the ban on partial-birth abortions, but more recently voted to permit local funding of abortions in Washington, D.C...." (*Id.* at 8). At the time of publication, Congresswoman Kelly was a candidate for nomination for the Republican Party in her re-election bid. The newsletter was dated the same day as the primary election.

RLDC makes plain its intention to continue to produce and distribute what it terms "issue advocacy communications" to the general public, especially in the lead-up to the 1998 federal primary and general elections in September and November, respectively. Specifically, RLDC intends to publish multiple editions of its newsletter prior to the 1998 federal elections, and to identify clearly persons who are likely candidates for federal office and to comment favorably or unfavorably on their positions, qualifications and voting records, if any. (Westover Decl. ¶ 29–31).

Plaintiff contends that its proposed communications are protected by the First Amendment pursuant to the definition of "express advocacy" set forth by the United States Supreme Court in *Buckley v. Valeo* and *MCFL* but would violate the FEC's express advocacy regulation, 11 C.F.R. § 100.22(b). Plaintiff contends further that the threat of FEC enforcement in New York is palpable, given the FEC's past enforcement efforts against corporations for allegedly making expenditures for "express advocacy" communications. That threat, plaintiff claims, has chilled its free expression on issues of public concern and has resulted in self-censorship. Plaintiffs seek relief from this Court to remove the threat of FEC action enforcing its definition of "express advocacy." (*See* Westover Decl. ¶¶ 34–38).

### C. *Procedural history*

Shortly after filing the complaint in this action, the FEC successfully moved to stay the proceedings based upon the pendency of its petition in the Supreme Court for a writ of *certiorari* in *Maine Right to Life Comm., Inc. v. FEC,* 98 F.3d 1 (1st Cir.1996) (*per*

*curiam*). In that litigation, the United States Court of Appeals for the First Circuit had affirmed the declaratory judgment issued by the district court pursuant to the Administrative Procedure Act ("APA") that the same FEC regulation at issue in this case was "contrary to the statute ... and thus beyond the power of the FEC." *See Maine Right to Life Comm., Inc. v. FEC*, 914 F.Supp. 8, 13 (D.Me.1996). After the Supreme Court denied the FEC's petition for a writ of *certiorari*, this Court lifted the stay in this action and these cross-motions for summary judgment followed.

## II. *Discussion*

### A. *Standing and ripeness*

■ Although the parties have agreed not to contest plaintiff's standing to bring this action, this Court has an independent obligation pursuant to Article III of the United States Constitution to assess whether standing exists. *See Lebron v. National R.R. Passenger Corp. (Amtrak)*, 69 F.3d 650, 659 (2d Cir.1995) (quoting *United States v. Hays*, 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995)). Article III standing requires a plaintiff to establish (1) actual injury, (2) a causal relation between the injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury. *See Lujan v. Defenders of the Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Minnesota Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir.1997).

■ In this case, as in any pre-enforcement challenge to a statute or regulation that provides for possible criminal penalties that threaten to abridge First Amendment rights, " 'a credible threat of present or future prosecution itself works as injury that is sufficient to confer standing.' " *Minnesota Citizens Concerned for Life*, 113 F.3d at 131 (quoting *New Hampshire Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir.1996)). Here, FECA provides for criminal as well as civil penalties, *see* § 437g(d)(1), plaintiff has stated its intention to make expenditures for communications that would violate the regulation at issue, and the FEC, in defending the regulation, does not disclaim an intention to enforce it. Moreover, a holding by this Court that the regulation is unenforceable would clarify which communications, if any, may be challenged by the FEC pursuant to FECA, and would, thus, redress any "chill" on First Amendment expression experienced by plaintiff. *See id.* For these reasons, the Court finds that plaintiff has standing to bring this action.

■ Moreover, this dispute is ripe for adjudication. While pre-enforcement lawsuits are often disfavored since they have the potential to interfere with an agency's decision of whether to enforce the law in the first instance, *see Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court has found such suits "fit" for prompt judicial decision where, as here, the dispute is legal as opposed to factual, and where the effect of the regulation is to chill expression of opinions. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 69–71, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993); *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 581–82, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985); *Abbott Labs. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). *See also Minnesota Citizens Concerned for Life*, 113 F.3d at 132.

### B. *Effect of the First Circuit's decision in Maine Right to Life Comm., Inc. v. FEC*

In addition to its direct attack on the regulation, plaintiff also advances the claim that this Court is bound by the declaratory judgment issued by the United States District Court for the District of Maine in *Maine Right to Life Comm., Inc.* According to plaintiff, "a declaration of invalidity under the APA is effective nationwide." (Plf's Mem. in Supp. of its Mot. for Summ. Judg., at 15). This contention is premised on language in the APA that when a reviewing court finds that an agency action is "in excess of statutory ... authority" it "shall ... hold [it] unlawful and set [it] aside." 5 U.S.C. § 706. Once "set aside," the plaintiff urges, the regulation is void, and cannot be enforced anywhere. Thus, according to plaintiff, upon the Maine District Court's declaration that 11 C.F.R. § 100.22(b) was unconstitutional, that court

had no choice but to "set aside" the regulation, making it forever unenforceable throughout the United States.

■ Plaintiff's argument is unavailing. This Court declines to view the Maine District Court's declaratory judgment, and the First Circuit's affirmance, in *Maine Right to Life Comm., Inc. v. FEC* as binding on it. First, plaintiff's contention is flatly contradicted by the well-settled principle in the federal court system that decisions in one circuit are not binding on district courts in another circuit. *See United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir.1994) ("Nothing the ... circuit [court] decides is 'binding' on district courts outside its territory. Opinions 'bind' only within a vertical hierarchy."); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (identifying the "principle that, until the Supreme Court speaks, the federal circuit courts are under duties to arrive at their own determination of the merits of federal questions presented to them") (citations omitted); *Pan Am. World Airways, Inc. v. C.A.B.*, 517 F.2d 734, 741 (2d Cir.1975). *See also In the Matter of the Extradition of Lin*, 915 F.Supp. 206, 211–212 (D.Guam 1995) (citing *Steffel v. Thompson*, 415 U.S. 452, 471, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974)).

Second, it is equally well-established that a party is not permitted to employ nonmutual collateral estoppel against the government, since an alternative rule "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *United States v. Mendoza*, 464 U.S. 154, 160, 104 S.Ct. 568, 572, 78 L.Ed.2d 379 (1984). While plaintiff disclaims any reliance on the doctrine of nonmutual collateral estoppel, acceptance of its proposition would achieve the same result, and would have precisely the same ill effects as employing the doctrine directly.

Third, despite plaintiff's reliance on the language of 5 U.S.C. § 706—the "Scope of Review" section of the APA—nothing in that section purports to require a reviewing court to adopt another court's conclusions and to enforce them by issuing injunctive relief without independent analysis, especially when the second court sits in another circuit. If Congress had intended to replace the well-accepted territorial limits of the precedential effects of court decisions by means of the APA, it presumably would have done so directly and expressly, rather than through a series of implied inferences. Finally, plaintiff has failed to cite a single case for the proposition it advances.[2] For all of these reasons, plaintiff's request that this Court enjoin the FEC from enforcing its regulation solely on the basis of the Maine District Court's judgment in *Maine Right to Life Comm., Inc.* is denied.

### C. The constitutionality of 11 C.F.R. § 100.22(b)

■ This Court does find, however, that 11 C.F.R. § 100.22(b)'s definition of "express advocacy" is not authorized by FECA, 2 U.S.C. § 441b, as that statute has been interpreted by the United States Supreme Court in *MCFL* and *Buckley v. Valeo*, and by the Second Circuit in *CLITRIM*, 616 F.2d 45 (2d Cir.1980). Specifically, as recognized by the First Circuit in *Maine Right to Life* and the Fourth Circuit in *FEC v. Christian Action Network, Inc.*, 110 F.3d 1049 (4th Cir.1997), both *Buckley* and *MCFL* "unequivocally require 'express' or 'explicit' 'words of advocacy of election or defeat of a candidate.'" *FEC v. Christian Action Network, Inc.*, 110 F.3d at 1055 (quoting *Maine Right to Life Comm., Inc.*, 914 F.Supp. at 10–12). The bright-line requirement of "express" or "explicit" words of advocacy of election or defeat of a candidate is necessary to avoid prohibitions on "issue discussions," which are plainly protected from regulation by the First Amendment. Yet, in 11 C.F.R. § 100.22(b), by omitting any requirement that the communication in-

---

**2.** Nor does this holding—as plaintiff contends—render the First Circuit's holding in *Maine Right to Life Comm., Inc.* an "advisory opinion." The First Circuit's ruling established a rule of law in that circuit. Moreover, the FEC has conceded that the decision would also likely have collateral estoppel effects outside the First Circuit if the FEC were to bring suit against the Maine Right to Life Committee itself, since a party that prevails on an issue is protected in other courts by virtue of the doctrine of defensive collateral estoppel. *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 169–74, 104 S.Ct. 575, 578–80, 78 L.Ed.2d 388 (1984).

clude "express" or "explicit" words of advocacy of election or defeat of a candidate, the FEC defined "express advocacy" to encompass substantially more communication than is permissible pursuant to the statute, as narrowed by the Supreme Court to avoid First Amendment overbreadth problems.

"Ordinarily, when a statute is silent or ambiguous, 'considerable weight should be accorded to an executive department's construction of a statutory scheme it [has been] entrusted to administer.' That rule of construction no longer applies, however, once the Supreme Court has spoken on the issue.... It is not the role of the FEC to second-guess the wisdom of the Supreme Court." *Faucher v. FEC*, 928 F.2d 468, 471 (1st Cir.1991) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

### D. *Appropriateness of a facial challenge to the regulation*

The FEC's argument that plaintiff must wait until it suffers an actual unlawful application of the regulation—in lieu of bringing this facial overbreadth challenge—amounts to a bootless attack on plaintiff's standing. A facial challenge may be brought where the statute or regulation is "substantially overbroad" and where there is a "realistic danger that the statute [or regulation] itself will significantly compromise recognized First Amendment protections of parties not before the Court." *New York State Club Assoc., Inc. v. City of New York*, 487 U.S. 1, 11, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). Such challenges are to be accepted "sparingly and only as a last resort." *Sanitation and Recycling Indus., Inc.*, 107 F.3d 985, 997 (2d Cir.1997) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). However, where, as here, the challenged regulation sweeps within its ambit a substantial amount of communication that is plainly protected by the First Amendment, and where plaintiff, as well as others not before the court who desire to engage in protected expression, may be dissuaded from such expression rather than risk prosecution, such facial challenges are entirely appropriate. *See Lebron v. National R.R. Passenger Corp. (Amtrak)*, 69 F.3d at 659–660 (2d Cir.

1995) (citing *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987)); *Scott v. Goodman*, 961 F.Supp. 424, 427 (E.D.N.Y. 1997) (citing *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940)).

### III. *Conclusion*

Accordingly, for the reasons set forth above, the Court finds, pursuant to 5 U.S.C. § 706, that 11 C.F.R. § 100.22(b) is unconstitutionally overbroad and beyond the scope of 2 U.S.C. § 441b. Given this holding, the Court need not reach plaintiff's claim that the regulation is unconstitutionally vague, and, thus, violative of the Fifth Amendment's due process guarantee. Plaintiff's motion for summary judgment is granted, defendant's motion for summary judgment is denied, 11 C.F.R. § 100.22(b) is determined to be unconstitutionally overbroad and, hence, invalid, and the FEC is enjoined from enforcing that provision.